# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL LAWRENCE** | **CIVIL ACTION** |
| **VERSUS** | **NO. 14-2261** |
| **(UPDC) WARDEN ADAM** | **SECTION "S"(4)** |

## <u>REPORT AND RECOMMENDATION</u>

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.      <u>Factual and Procedural Background</u>

The petitioner, Michael Lawrence ("Lawrence"), is a convicted inmate currently incarcerated in the B.B. (Sixty) Hunt Correctional Center in Angie, Louisiana.[2] On June 12, 2008, Lawrence and his co-defendant, Louis Seymour, were charged by Bill of Information in Orleans Parish each with one count of possession with intent to distribute cocaine and Lawrence with one count of distribution of cocaine.[3]

The record reflects that, on April 11, 2008, Detective Michael Dalferes, a member of the Major Case Narcotics Unit of the New Orleans Police Department, was part of an undercover

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 16.

[3]St. Rec. Vol. 1 of 3, Bill of Information, 6/12/08.

buy/bust operation targeting street level narcotics dealers.[4]  His assignment was to pose as a potential buyer in an unmarked vehicle equipped with audio and video surveillance equipment and was provided with marked and recorded currency.

While proceeding down Marais Street in New Orleans, a man later identified as Seymour, flagged him down.  Detective Andrew Roccaforte, a member of the support team, was watching the transaction between Seymour and Detective Dalferes.  Detective Dalferes told Seymour that he wanted "two dimes" or two $10.00 pieces of crack cocaine.  Seymour took a $20.00 bill from him and Dalferes moved his car to the side of the street.  Seymour walked away, turning down St. Anthony Street.

Detective Roccaforte continued to watch as Seymour walked on St. Anthony Street in a river bound direction and maintained sight of him until he approached the front door of a residence located at 1220 St. Anthony Street.  Seymour knocked, and within seconds he was greeted at the door by a black male, later identified as Lawrence.  Seymour handed Lawrence the money in exchange for a small object.  Seymour went into the house for a few minutes before leaving to return to Detective Dalferes' car.

On his return, Seymour gave Detective Dalferes a single $20.00 piece of crack cocaine wrapped in plastic, instead of the two $10.00 pieces Detective Dalferes had requested. Detective Dalferes took the cocaine and drove away.  He then radioed members of his support team, provided a description of Seymour, and gave them the signal to move in and effect the arrest.

---

[4]The facts were taken from the published opinion of the Louisiana Fourth Circuit Court of Appeal on direct appeal.  *State v. Lawrence*, 120 So.3d 812, 814-16 (La. App. 4th Cir. 2012); St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1026, pp. 2-4, 7/3/13.

Detective Kyle Hinrichs was the first detective to arrive to make the arrest. After arresting Seymour, Detective Hinrichs went to the house at 1220 St. Anthony Street, where he was met by Sergeant Jeff Sislo and another detective. They knocked on the door, and Lawrence answered the door and was advised of the investigation and his *Miranda* rights. Lawrence admitted to the officers that he had a piece of crack cocaine on him at that time and stated, "I can't go, I can't go to jail."

Nevertheless, Lawrence was placed under arrest and searched. The officers recovered from his person a total of $27.00 in cash, including the marked $20.00 bill, and a piece of crack cocaine. Sergeant Sislo entered the house to speak with the occupants and did a quick walk through for safety reasons to determine who was present inside the house. On the coffee table in the front room, he saw approximately six or seven crack pipes (clear plastic tubes with burnt residue) and a razor blade. There were four women inside the house at the time. One was the homeowner who was bedridden.

On October 30, 2008, Seymour entered a plea of guilty to a reduced charge of possession of cocaine and was sentenced to serve one year in prison at hard labor.[5] Lawrence was eventually tried before a jury on December 5, 2011, and was found guilty as charged of one count of distribution of cocaine and one count of the lesser offense of possession of cocaine.[6] The state trial court sentenced Lawrence on February 28, 2012, to serve concurrent sentences of five (5) years in prison.[7] That same day, the State filed a multiple offender bill charging Lawrence as a fourth felony offender.[8]

---

[5]St. Rec. Vol. 1 of 3, Minute Entry, 10/30/08.

[6]St. Rec. Vol. 1 of 3, Trial Minutes, 12/5/11; St. Rec. Vol. 2 of 3, Trial Transcript, 12/5/11.

[7]St. Rec. Vol. 1 of 3, Sentencing Minutes, 2/28/12; St. Rec. Vol. 2 of 3, Sentencing Transcript, p. 2, 2/28/12.

[8]St. Rec. Vol. 1 of 3, Multiple Bill, 2/28/12.

After hearings on the matter were held on October 5, 2012, and June 13, 2013, the Trial Court adjudicated Lawrence to be a "multiple offender."[9] The Trial Court vacated the prior sentence (without designating a particular count) and sentenced him to serve nine (9) years in prison. The State objected to the lenient sentence and was granted leave to file for review in the Louisiana Fourth Circuit.

In the meantime, on direct appeal to the Louisiana Fourth Circuit Court of Appeal, Lawrence's appointed counsel asserted two errors addressed to the trial and the original sentencing held on February 28, 2012:[10] (1) the state trial court erred in denying the defense's motion for mistrial based on the prosecutor's prejudicial comments during closing arguments; and (2) the state trial court incorrectly sentenced Lawrence on February 28, 2012, for possession with intent to distribute where he was actually convicted of possession of cocaine.

On July 3, 2013, the Louisiana Fourth Circuit found two errors patent on the face of the record, including the same problem addressed in Lawrence's second assignment of error.[11] First, the Circuit Court found that the Trial Court's statements at sentencing and the minutes from February 28, 2012, indicated that he was sentenced for possession with intent to distribute, a crime for which he was not convicted. Second, the Trial Court failed to order that the first two years of Lawrence's sentence for distribution of cocaine had to be served without the benefit of parole. The Circuit Court noted that the second concern was self-correcting under the law. Finding no merit in the other assignment of error, the Circuit Court affirmed both of Lawrence's convictions and the

---

[9]St. Rec. Vol. 1 of 3, Multiple Bill Hearing Minutes, 6/13/13; Multiple Bill Hearing Minutes, 10/5/12; St. Rec. Vol. 3 of 3, Multiple Bill Hearing Transcript, p. 20, 6/13/13.

[10]St. Rec. Vol. 2 of 3, Appeal Brief, 2012-KA-1026, 10/19/12.

[11]*Lawrence*, 120 So.2d at 812; St. Rec. Vol. 2 of 3, 4th Cir. Opinion, 2012-KA-1026, 7/3/13.

sentence for distribution of cocaine, as corrected.  However, the Circuit Court, apparently unaware of the multiple offender proceedings concluded on June 13, 2013, vacated the original sentence for the second count and remanded the matter to the trial court for resentencing on the correct charge and clarification of the minutes.

Shortly thereafter, on August 27, 2013, Lawrence filed a mandamus request with the Louisiana Fourth Circuit to compel his resentencing ordered on direct appeal.[12]  The Circuit Court denied the application on September 20, 2013, noting that the multiple offender sentencing on June 13, 2013, acted as his resentencing and rendered moot the remand order issued on appeal.[13]

In the meantime, on September 13, 2013, after several delays awaiting the multiple offender transcript, the State filed a writ application with the Louisiana Fourth Circuit seeking review of the multiple offender sentence imposed on June 13, 2013, arguing that it was an abuse of the Trial Court's discretion to improperly depart from the required minimum sentence.[14]  The Circuit Court, over the strong dissenting opinion of one judge, denied the application finding that the Trial Court adequately stated its reasons for the departure and did not abuse his discretion.[15]

The State filed a writ application with the Louisiana Supreme Court seeking review of that ruling.[16]  On April 11, 2014, the Louisiana Supreme Court granted the application and, agreeing with the dissenting opinion in the Circuit Court, found that the Trial Court abused his discretion in failing

---

[12]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2012-KA-1026, 8/27/13.

[13]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2013-K-1188, 9/20/13.

[14]St. Rec. Vol. 3 of 3, 4th Cir. Writ Application, 2013-K-1245, 9/13/13.

[15]St. Rec. Vol. 3 of 3, 4th Cir. Order, 2013-K-1245, 12/11/13.

[16]St. Rec. Vol. 3 of 3, La. S. Ct. Writ Application, 14-KK-0081, 1/10/14.

to follow the proscribed procedures before deviating from the statutory minimum sentence.[17]  The Court vacated the multiple offender sentence and remanded the matter to the Trial Court for resentencing.  Although the record is devoid of any more current pleadings, the State represents that Lawrence has not yet been resentenced.[18]

## II.    **Federal Petition**

On September 29, 2014, the Clerk of this Court filed Lawrence's federal petition for habeas corpus relief in which he asserts, under a broad reading, that the Trial Court abused its discretion in finding him to be a multiple offender when it disregarded the State's loss of records of prior multiple offender hearings and the Louisiana Fourth Circuit's remand order for resentencing.[19]

The State filed a response in opposition to Lawrence's petition arguing that Lawrence's federal petition is premature because he has not been resentenced and his convictions and sentences are not yet final for purposes of federal habeas review under § 2254.[20]

## III.    **General Standards of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[21] applies to this petition, which is deemed filed in this Court on September 24,

---

[17]*State v. Lawrence*, 136 So.3d 795 (La. 2014); St. Rec. Vol. 3 of 3, La. S. Ct. Order, 2014-KK-0081, 4/11/14.

[18]Rec. Doc. No. 14, p. 7.

[19]Rec. Doc. No. 1.

[20]Rec. Doc. Nos. 14.

[21]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

2014.[22]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As noted by the State, Lawrence's convictions and sentences are not yet final based on the procedural posture and pendency of the multiple offender re-sentencing.  Through its tortured discussion of the AEDPA's limitations provision, the State apparently argues that Lawrence's petition is premature, having been filed before his resentencing and the finality of his convictions.  Clearly, under the appropriate circumstances, this Court can exercise jurisdiction over a federal habeas petition filed prior to finality of a conviction under its general powers addressed in 28 U.S.C. § 2241.  Nevertheless, the proper characterization of Lawrence's prematurity, is that he has not exhausted state court remedies as to his challenge to his multiple offender adjudication (not the sentence which has been vacated) and the failure of the state court to resentence him.  Therefore, the Court finds that Lawrence's petition can be dismissed for his failure to exhaust.

## IV.   **Exhaustion Doctrine**

As mentioned above, while the State argues that Lawrence's petition is premature, it did not specifically invoke an exhaustion defense.  The Court therefore places Lawrence on notice that it

---

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 376-78 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Lawrence's federal habeas petition on September 29, 2014, after the granting of pauper status.  Lawrence dated his signature on the form petition on September 24, 2014, which is the earliest date on which he could have submitted his pleadings to prison officials for mailing to the Court.

is raising *sua sponte* the failure to exhaust. *Accord Kurtzemann v. Quarterman*, 306 F. App'x 205, 206 (5th Cir. 2009) (citing *Day v. McDonough*, 547 U.S. 198, 209-10 (2006) (addressing limitations) and *Magouirk v. Phillips*, 144 F.3d 348, 358 (5th Cir. 1998) (addressing exhaustion)) (finding that district court may sua sponte raise failure to exhaust, and notice of and an opportunity to respond to the exhaustion issue must be given); *see also*, 28 U.S.C. § 2254(b)(3) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this Court is *sua sponte* raising the issue of exhaustion as to this claim and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a petitioner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id*. at 32.

Before addressing Lawrence's failure to exhaust, the Court is compelled to embellish on the peculiar procedural posture of Lawrence's state court proceedings. As it stands on the record before the Court, Lawrence was convicted of one count of distribution of cocaine and one count of possession of cocaine, a lesser included offense of his original charge, for which he received concurrent five-year sentences. On direct appeal, the sentence imposed on the second count was vacated because of the Trial Court's erroneous reference to the wrong charge when imposing the sentence. The Louisiana Fourth Circuit later declared its order of remand for resentencing on the second count to be moot because Lawrence in the interim was sentenced as a "multiple offender" to serve nine years in prison, a term below the statutory minimum. That multiple offender sentence was later vacated by the Louisiana Supreme Court as an abuse of discretion. With the multiple offender sentence vacated, and the original sentence on count two vacated, the record does not reflect that Lawrence is actually serving a sentence for count two.

Nevertheless, disconcerted by the state of the proceedings, the Court's own research has disclosed that Lawrence is scheduled for resentencing before the state trial court on May 18, 2015.[23] The clerk of the state trial court was unclear whether that sentencing was for the original charge of possession of cocaine (per the Louisiana Fourth Circuit's remand order) or on the multiple offender adjudication (per the Louisiana Supreme Court's remand order). Thus, as the State's suggests, Lawrence's case is not complete on the state level, and more importantly, Lawrence will have ample opportunity to return to this federal court should any federal claims remain after his convictions and sentences become final following full review in the state courts.

To that end, a review of the records currently before the Court reflects that Lawrence has <u>not</u> exhausted state court review of the claims raised in this federal petition. As mentioned above, Lawrence has not appealed or challenged the multiple offender adjudication or sought any review thereof in the higher state courts. To the extent he claims that the state trial court erred in failing to comply with the Louisiana Fourth Circuit's remand order, later deemed moot, he did not seek review of that finding in the Louisiana Supreme Court. In other words, Lawrence did not give the Louisiana Supreme Court the opportunity to determine whether the Fourth Circuit's "mooting" of its remand order was in error, especially considering the fact that the high court vacated the multiple offender sentence which made the remand order moot.

Clearly, under the circumstances of this case, comity would dictate that the Louisiana courts be given an opportunity to properly sentence Lawrence before this Court addresses the merits of Lawrence's claims. The record discloses no good cause to overlook Lawrence's failure to properly and fully exhaust his claims in the state courts, especially in light of the posture of his state criminal

---

[23]A member of the Court's staff contacted the clerk of the Orleans Parish Criminal District Court and was advised of this scheduled date.

case.  *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).  This petition should be dismissed without prejudice for Lawrence's failure to exhaust available state court remedies.[24]

## V.    Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Lawrence's petition for issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Assoc.*, 79 F.3d 1415, 1430 (5th Cir. 1996).[25]

New Orleans, Louisiana, this 29th day of May, 2015.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[24]This premature and fully <u>un</u>exhausted petition does not fall among the limited circumstances that would warrant a stay.  *Rhines*, 544 U.S. at 277-78; *see also Pliler v. Ford*, 542 U.S. 225, 233 (2004).

[25]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.